CINCINNATI BAR ASSOCIATION *v*. ALSFELDER.

[Cite as *Cincinnati Bar Assn. v. Alsfelder,* 138 Ohio St.3d 333,

2014-Ohio-870.]

*Attorney discipline—Failure to cooperate in disciplinary proceeding—Indefinite*
*suspension.*

(No. 2013-0223—Submitted June 4, 2013—Decided March 13, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 10-076.

_____

**Per Curiam**.

{¶ 1} Respondent, Robert F. Alsfelder Jr. of Cincinnati, Ohio, Attorney
Registration No. 0014829, was admitted to the practice of law in Ohio in 1981.[1]
In October 2004, we imposed a one-year suspension, fully stayed on conditions,
for Alsfelder's conduct in accepting employment without disclosing that his
professional judgment could be affected by his own personal interests, charging a
clearly excessive fee, and failing to maintain complete records of client funds in
his possession. *Cincinnati Bar Assn. v. Alsfelder*, 103 Ohio St.3d 375, 2004-
Ohio-5216, 816 N.E.2d 218.

{¶ 2} In August 2010, a probable-cause panel of the Board of
Commissioners on Grievances and Discipline certified a two-count complaint
submitted by relator, Cincinnati Bar Association. The complaint alleged that
Alsfelder had failed to maintain records of client funds in his possession,
converted client funds to his own use, and failed to provide a full accounting to
his client, that he had engaged in dishonesty, fraud, deceit, or misrepresentation

_____

1. Alsfelder testified that he is also licensed to practice law in Kentucky and Florida.

by using information obtained in the course of his representation to the client's disadvantage, and that he had entered into a business relationship with the client to the client's detriment. In an amended complaint filed in July 2012, relator added two additional counts, alleging that over a five-year period, Alsfelder had failed to report certain income on his state and federal income tax returns and that he had failed to cooperate in relator's investigation of his alleged misconduct.

{¶ 3} We found Alsfelder in contempt of court on May 19, 2011, and ordered him to comply with orders issued by the board, including a subpoena duces tecum that required him to appear at a deposition and to produce certain documents relevant to this disciplinary proceeding. *Cincinnati Bar Assn. v. Alsfelder*, 128 Ohio St.3d 1495, 2011-Ohio-2384, 947 N.E.2d 177. On September 7, 2011, we suspended Alsfelder from the practice of law pending proof of his compliance with the prior orders of this court and the board. *Cincinnati Bar Assn. v. Alsfelder*, 130 Ohio St.3d 1201, 2011-Ohio-5514, 955 N.E.2d 1011. Because Alsfelder has steadfastly refused to comply with those orders, that suspension remains in effect.

{¶ 4} On November 2, 2012, the chair of the panel appointed to hear the case issued an entry stating that the panel had unanimously found that the evidence was insufficient to support the allegations contained in Count Two of the complaint and dismissing that count in its entirety. Later, the panel issued a report, in which it found that Alsfelder had failed to cooperate in relator's investigation as charged in Count Four of the complaint, but that there was insufficient evidence to establish that he committed the misconduct charged in Counts One and Three of the complaint. The panel recommended that Counts One and Three be dismissed and that Alsfelder be indefinitely suspended for his misconduct. The board adopted the findings of fact, conclusions of law, and recommendation of the panel.

**{¶ 5}** The parties object to the board's findings and its recommended sanction. Relator contends that it presented sufficient evidence to support one of the violations alleged in Count One and both of the alleged violations in Count Three of its complaint. Alsfelder argues that the board improperly found that certain aggravating factors were present, failed to credit him with certain mitigating factors, and recommended a sanction that is unduly harsh. For the reasons that follow, we overrule their objections, adopt the board's findings of fact and conclusions of law, and indefinitely suspend Alsfelder from the practice of law in Ohio.

### Misconduct

### Count One—Client Funds and Records

**{¶ 6}** In its amended complaint, relator charged Alsfelder with violations of Prof.Cond.R. 1.15(a) (requiring a lawyer to hold funds belonging to a client or third party in a client trust account separate from his own property and to maintain certain records regarding the funds held in that account), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). These charges arose from Alsfelder's handling of business matters for Eastern Hills Dry Cleaners. Adopting the panel's recommendation, however, the board recommends that this count be dismissed in its entirety based on the insufficiency of the evidence. Relator objects, arguing that it has established, by clear and convincing evidence, that Alsfelder violated Prof.Cond.R. 1.15(d).

**{¶ 7}** Alsfelder was a regular customer of Eastern Dry Cleaners. He entered into an agreement with Joseph Witschger, the sole owner of the business, for himself and his wife—an attorney and an accountant—to "take over the business aspects of the cleaners," billing their legal services at $225 per hour, and their business-related services at $65 per hour. He testified that he would

typically visit Witschger each day to discuss business issues and collect the mail. He would take the mail to his wife, who would organize the documents and prepare checks to pay Eastern's bills. Alsfelder would return the documents to Witschger as soon as his wife was through with them, and Witschger—the only authorized signatory on the account—would sign the checks and prepare them for mailing.

{¶ 8} It is undisputed that from 2005 to 2008, more than 300 checks, totaling over $152,000, were issued to Alsfelder on Eastern's account. Two hundred seventy-two of those checks, totaling more than $141,000, contained no notation on the memo line to describe the purpose of the check. Rather than depositing the checks, Alsfelder cashed them at various Cincinnati banks.

{¶ 9} Alsfelder did not keep records of the time spent on Witschger's business matters or of bills to him for services rendered. He testified that he spent a minimum of 6 or 7 hours a week and that his wife worked a minimum of 17 to 19 hours per week on Witschger's business, that the payments they received were made in arrears, and that their fee arrangement did not compensate them for all of the hours they put into the business. Thus, the board found that Alsfelder had never held funds belonging to Witschger.

{¶ 10} Although the board expressed concern about the large number of checks written to Alsfelder and his complete failure to account for them, it noted that Witschger admitted that he had never requested an accounting from Alsfelder. The board also found that relator had not requested an accounting. Therefore, the board determined that relator had failed to prove the alleged violations of Prof.Cond.R. 1.15(a) or (d), which set forth a lawyer's duties with respect to the handling of funds belonging to clients or other third parties.

{¶ 11} Witschger claimed that he had no knowledge of the payees to whom the checks were issued because Alsfelder concealed the payee line of the checks that he presented for signature. But the board believed that Alsfelder's

4

testimony on the issue was more credible and noted that Witschger had access to all of the information because he received all of the mail and had access to his bank records. Therefore, the board also determined that there was insufficient evidence to establish that Alsfelder had engaged in dishonesty, fraud, deceit, or misrepresentation in violation of Prof.Cond.R. 8.4(c).

**{¶ 12}** Relator objects to the board's findings of fact and recommendation that Count One be dismissed, arguing that it has presented clear and convincing evidence that *it* requested an accounting of Alsfelder's work for, charges to, and payments received from Eastern Hills Cleaners, and that Alsfelder failed to comply with its request. Therefore, relator contends that it has proven by clear and convincing evidence that Alsfelder violated Prof.Cond.R. 1.15(d).

**{¶ 13}** Relator misapprehends the scope and application of Prof.Cond.R. 1.15(d). The rule provides:

> Upon receiving funds or other property in which a client or third person has a lawful interest, a lawyer shall promptly notify the client or third person. For purposes of this rule, the third person's interest shall be one of which the lawyer has actual knowledge and shall be limited to a statutory lien, a final judgment addressing disposition of the funds or property, or a written agreement by the client or the lawyer on behalf of the client guaranteeing payment from the specific funds or property. Except as stated in this rule or otherwise permitted by law or by agreement with the client or a third person, confirmed in writing, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive. *Upon request by the client or third person, the lawyer shall*

> *promptly render a full accounting regarding such funds or other*
> *property.*

(Emphasis added.)

{¶ 14} The third person discussed throughout Prof.Cond.R. 1.15(d) is not *any* third person, but the third person who has a lawful interest in funds or other property in the lawyer's possession. To interpret the rule otherwise would permit any third person to request—and be entitled to receive—an account of funds or property held by a lawyer. Here, the facts that relator subpoenaed Alsfelder's account records and that Alsfelder failed to comply are simply not relevant in the context of an alleged violation of Prof.Cond.R. 1.15(d). They are, however, relevant to the alleged violation of Gov.Bar R. V(4)(G) in Count Four of relator's complaint.

### Count Three—Alleged Tax Improprieties

{¶ 15} Count Three of the amended complaint alleges that Alsfelder received and cashed checks from Witschger and/or Eastern Hills Dry Cleaners from 2004 through 2009 but failed to report those funds as gross income on his corresponding state and federal tax returns. Relator alleges that this conduct violates Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and 8.4(c). But the only evidence that relator adduced in support of these allegations was a set of requests for admission that the panel deemed admitted after Alsfelder failed to answer them.

{¶ 16} Those facts deemed admitted, as stated in the panel's order and the request for admissions, are as follows:

> 1. Respondent filed Federal and State of Ohio Income Tax
> Returns in 2004.

2. Respondent filed Federal and State of Ohio Income Tax Returns in 2005.

3. Respondent filed Federal and State of Ohio Income Tax Returns in 2006.

4. Respondent filed Federal and State of Ohio Income Tax Returns in 2007.

5. Respondent filed Federal and State of Ohio Income Tax Returns in 2008.

6. Respondent received checks from Joseph Witschger and/or Eastern Hills Dry Cleaners made payable to Robert F. Alsfelder and/or Robert Alsfelder for legal and business services.

7. Checks were made payable to Robert Alsfelder from Eastern Hills Dry Cleaners and/or Joseph Witschger which were cashed but the money was not reported as gross income either on Respondent's Ohio and/or Federal Income Tax Returns from the years 2004 through 2009.

{¶ 17} The board recommended that this count be dismissed because these admissions were insufficient to prove that Alsfelder had engaged in tax evasion as alleged in the complaint. They did not establish that the checks he received for legal and business services and subsequently cashed were the same checks that he failed to report as gross income. Indeed, the board found that at least one of the checks Alsfelder had received from Eastern was a $447.30 reimbursement for slacks that Eastern had damaged in the cleaning process—funds that would not be considered as income for tax purposes.

{¶ 18} Relator objects to the board's recommendation that Count Three of its complaint be dismissed, arguing that that the facts deemed admitted by the

board clearly and convincingly prove that Alsfelder violated Prof.Cond.R. 8.4(b) and (c). We disagree.

{¶ 19} The facts deemed admitted do not establish that the checks Alsfelder received as payment for services rendered are also the checks that he failed to report on his tax returns. Not only did Alsfelder testify about the check he received for clothing damaged during the cleaning process, relator also submitted copies of at least 40 other checks that Alsfelder identified as reimbursements for various expenses that he had advanced on behalf of Eastern Dry Cleaners. While Alsfelder testified that those amounts might qualify as business expenses to be deducted from Eastern's gross income, relator has offered no evidence that those reimbursements would constitute taxable income to Alsfelder. Therefore, we overrule realtor's objection, adopt the board's findings of fact, and dismiss Count Three of relator's complaint.

### Count Four—Failure to Cooperate

{¶ 20} The board's sole finding of misconduct against Alsfelder is that he failed to cooperate in relator's investigation and the resulting disciplinary proceeding in violation of Gov.Bar R. V(4)(G).

{¶ 21} The board found that Alsfelder failed to comply with a November 2010 subpoena to appear for a deposition and produce certain documents, including a copy of his account-balance document showing a running account of charges for services rendered to and money received from Witschger and copies of his federal tax returns for the years 2004 through 2009.

{¶ 22} In response to relator's motion to compel discovery, on January 19, 2011, the panel chair ordered Alsfelder to produce the documents in accordance with the subpoena, but he failed to do so. We found Alsfelder in contempt on May 19, 2011, and ordered him to comply with board orders, including the November 2010 subpoena. *Cincinnati Bar Assn. v. Alsfelder*, 128 Ohio St.3d 1495, 2011-Ohio-2384, 947 N.E.2d 177.

8

{¶ 23} On July 8, 2011, the panel recommended that we once again find Alsfelder in contempt—this time based on his failure to comply with an order to sign a standard Internal Revenue Service waiver that would allow relator to obtain copies of his tax returns.

{¶ 24} On September 22, 2011, we granted relator's motion to impose sanctions and suspended Alsfelder from the practice of law in Ohio pending a filing of proof that he has obeyed this court's May 19, 2011 order and complied with the subpoena duces tecum previously served on him by the board. *Cincinnati Bar Assn. v. Alsfelder*, 130 Ohio St.3d 1201, 2011-Ohio-5514, 955 N.E.2d 1011.

{¶ 25} We found Alsfelder in contempt a second time on March 30, 2012, and ordered him to pay a fine of $500. 131 Ohio St.3d 1492, 2012-Ohio-1368, 964 N.E.2d 434. While our order does not state what conduct resulted in this finding of contempt, it grants relator's motion for contempt, which alleged that Alsfelder continued to disobey previous orders of the board and this court and that he filed a false affidavit of compliance following his suspension.

{¶ 26} In light of this conduct, the board concluded that Alsfelder violated Gov.Bar R. V(4)(G). We adopt the board's findings of fact and misconduct with respect to Count Four of the complaint.

## Sanction

{¶ 27} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**Aggravating and Mitigating Factors**

{¶ 28} The board found that four of the nine aggravating factors set forth in BCGD Proc.Reg. 10(B)(1) are present. Alsfelder has served a one-year stayed suspension and made restitution of $30,000 for misconduct that occurred from 1998 to 2001. *See* BCGD Proc.Reg. 10(B)(1)(a); *Cincinnati Bar Assn. v. Alsfelder*, 103 Ohio St.3d 375, 2004-Ohio-5216, 816 N.E.2d 218. The board also found that he engaged in a pattern of misconduct and failed to cooperate in the disciplinary process by failing to comply with orders of the board and this court and that he submitted false evidence, made false statements, or engaged in other deceptive practices during the disciplinary process by being "very guarded in his testimony." *See* BCGD Proc.Reg. 10(B)(1)(c), (e), and (f). However, the board found that none of the mitigating factors enumerated in BCGD Proc.Reg. 10(B)(2) are present.

{¶ 29} Alsfelder disputes the board's findings with respect to the applicable aggravating factors and also contends that the board failed to recognize that a number of mitigating factors are present.

{¶ 30} Alsfelder challenges the board's finding that he engaged in a pattern of misconduct, arguing that his conduct consists of one act—failing to provide the requested tax records or a waiver so that relator could obtain them directly from the IRS. Even if Alsfelder's misconduct arose only from his failure to produce his tax returns as he suggests, it is his continued failure to provide those documents in defiance of no less than five board orders and three orders of this court over a period of more than three years that demonstrates the pattern of misconduct in this case.

{¶ 31} Alsfelder also challenges the board's finding that he submitted false evidence or false statements or engaged in other deceptive practices during the disciplinary proceeding and that, pursuant to BCGD Proc.Reg. 10(B)(1)(f), this factor weighs in favor of a more severe sanction. He notes that in support of

its finding, the board states only, "At the hearing, Respondent was very guarded in his testimony. Respondent has not been forthcoming." But the very act of withholding the requested tax records under the guise of preserving the confidentiality of his wife's information and claims of their irrelevance—despite having been ordered numerous time to produce them or execute a waiver for their release—is, itself, a deceptive practice. Furthermore, we find that Alsfelder's continued recalcitrance in the face of multiple orders to turn over the requested documents demonstrates that he has refused to acknowledge the wrongful nature of his conduct—an aggravating factor pursuant to BCGD Proc.Reg. 10(B)(1)(g).

**{¶ 32}** In addition to challenging the aggravating factors found by the board, Alsfelder contends that it should have found a number of mitigating factors, including the absence of a dishonest or selfish motive, the absence of any violations of the disciplinary rules relative to the underlying grievance, the absence of harm to the grievant, his pro bono work, and the imposition of other penalties or sanctions for his contempt of this court's orders. *See* BCGD Proc.Reg. 10(B)(2)(a), (b), (e), and (f). These claims are without merit.

**{¶ 33}** We find that relator's failure to prove the underlying misconduct has no mitigating effect on the misconduct that has been established by clear and convincing evidence—namely, Alsfelder's failure to cooperate in the disciplinary investigation and proceedings before this court. And on the record before us, we cannot find that there has been no harm to the grievant or that Alsfelder acted without a selfish or dishonest motive because the evidence plainly shows that Alsfelder received more than $141,000 over a period of four years for little more than the payment of routine bills and the negotiation of payment plans with creditors. Neither relator's failure to carry its burden of proof with regard to the underlying allegations of misconduct, nor the client's admitted failure to request an accounting is sufficient to establish that Alsfelder's motives were pure or that the grievant suffered no harm at his hand.

**{¶ 34}** Alsfelder's unsubstantiated claim that he has provided pro bono services that warrant mitigating effect is likewise without merit. *See, e.g., Cleveland Metro. Bar Assn. v. Berk*, 132 Ohio St.3d 82, 2012-Ohio-2167, 969 N.E.2d 256, ¶ 25-28 (evidence that attorney had accepted well over 200 referrals from the Cleveland Legal Aid Society and provided additional pro bono assistance to numerous other clients referred by the Consumer Protection Association since the early 1970s recognized as a mitigating factor); *Cleveland Metro. Bar Assn. v. Kealy*, 125 Ohio St.3d 238, 2010-Ohio-1554, 927 N.E.2d 591, ¶ 13, 19 (finding that 25 years of involvement with the legal aid society, a "staggering amount" of pro bono work, and a long history of volunteerism qualify as a mitigating factor); *Cincinnati Bar Assn. v. Lawson*, 119 Ohio St.3d 58, 2008-Ohio-3340, 891 N.E.2d 749, ¶ 67 (evidence that attorney routinely took criminal cases pro bono to defend basic rights of the accused considered as a mitigating factor).

**{¶ 35}** We also reject Alsfelder's claim that the suspension he is currently serving for his failure to purge his contempt of our previous orders is another penalty or sanction for the same conduct that should be considered as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(f). That suspension was not intended to punish Alsfelder for violating the Rules of Professional Conduct; it was intended as a remedial or coercive sanction to compel his compliance with the lawful orders of the board and this court. *See, e.g., Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 12. Alsfelder could have avoided the sanction entirely and has held the keys to his reinstatement during the duration of that suspension—all he had to do was comply with our previous order. *Id.* at ¶ 17. Therefore, we accord no mitigating effect to this sanction.

### Proposed Sanction

**{¶ 36}** Relator recommended that Alsfelder be permanently disbarred for his misconduct, but that recommendation is based in part on alleged misconduct

that has not been proven by clear and convincing evidence. Alsfelder urged the board to dismiss the entire complaint, arguing that his failure to cooperate had already been dealt with by this court in the contempt proceeding. The board concluded, however, that Alsfelder's ongoing failure to cooperate in this disciplinary proceeding warrants an indefinite suspension from the practice of law.

**{¶ 37}** " 'One of the fundamental tenets of the professional responsibility of a lawyer is that he should maintain a degree of personal and professional integrity that meets the highest standard. The integrity of the profession can be maintained only if the conduct of the individual attorney is above reproach. He should refrain from any illegal conduct. Anything short of this lessens public confidence in the legal profession—because obedience to the law exemplifies respect for the law.' " *Cincinnati Bar Assn. v. Hennekes*, 110 Ohio St.3d 108, 2006-Ohio-3669, 850 N.E.2d 1201, ¶ 13, quoting *Cleveland Bar Assn. v. Stein*, 29 Ohio St.2d 77, 81, 278 N.E.2d 670 (1972).

**{¶ 38}** Here, Alsfelder's misconduct goes far beyond the typical failure to cooperate in a disciplinary investigation. It encompasses a complete and contumacious disregard of this court's orders over a period of years. Alsfelder's recalcitrance flies in the face of his oath of office, his duties to this court, and his duties to the legal profession as a whole. If he is unable or unwilling to conduct himself with dignity, civility, and respect in the conduct of his own legal affairs, we cannot expect him to competently, ethically, or professionally represent the clients who entrust him with their most important affairs. Therefore, we adopt the board's recommendation that he be indefinitely suspended from the practice of law. However, that suspension shall not commence until Alsfelder has purged his contempt of the prior orders of this court.

**{¶ 39}** Accordingly, Robert F. Alsfelder Jr. is indefinitely suspended from the practice of law in Ohio; however, that indefinite suspension will not go into

effect until Alsfelder purges his contempt of this court's prior orders in case No. 2011-0625. Costs are taxed to Alsfelder.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Michael P. Foley, Stephen M. Nechemias, and Edwin W. Patterson III, for relator.

Richard C. Alkire, for respondent.

_____